614 So.2d 853 (1993)
Sam O. HENRY, III and Shearon Regenold Henry, Plaintiffs-Appellants,
v.
PIONEER SWEET POTATO COMPANY, INC., Larry D. Crowe & William T. Eubanks, Defendants-Appellees.
No. 24399-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
Rehearing Denied March 25, 1993.
*854 Sam O. Henry, III, West Monroe, for plaintiffs-appellants.
Felix J. Bruyninckx, III, Monroe, for defendants-appellees.
Before LINDSAY, BROWN and WILLIAMS, JJ.
BROWN, Judge.
We are presented with the problem of ranking security interests in the 1990 sweet potato crop produced by Pioneer Sweet Potato Co., Inc. ("Pioneer"). Plaintiffs-appellants, Sam and Shearon Henry ("the Henrys"), claim a lessor's privilege over the crop and the intervenor-appellee, Capital Bank ("Capital"), claims a security interest in the crop.

FACTS
On April 2, 1990, Deborah Plantation Partnership ("Deborah"), acting through Sam Henry, and Pioneer entered into a contract entitled "1990 Farm Operating Agreement". Pioneer agreed to farm ("take full possession of") a tract of approximately 900 acres, known as "the Crowe Place", in West Carroll Parish, Louisiana, while Deborah agreed to do the same regarding 2400 acres in East Carroll Parish. Pioneer agreed to pay the sum of $30,000 by April 15, 1990, and $29,765.70 by December 15, 1990. Both payments by Pioneer were to be applied to the farm's annual debt. The agreement contained no reference to who owned the property nor did anyone sign as owner. Defendant, Pioneer, failed to pay the sum due on April 15 and the Henrys filed suit as owners of the West Carroll property on July 9, 1990, seeking the $30,000 installment. The Henrys claimed the agreement was a lease and sought recognition of a lessor's privilege.
On May 15, 1990, Capital made a loan to Pioneer in the principal amount of $234,500, or such other or lesser amounts as may be reflected as the unpaid balance of advances made on a revolving line of credit. This loan is evidenced by a promissory note guaranteed by two agreements granting Capital a security interest in farm equipment and the 1990 cotton and sweet potato crops to be grown on the West Carroll farm. Both security agreements contain after-acquired property clauses, cover all proceeds, accessions and fixtures and UCC-1 financing statements were filed with the Secretary of State. Capital also filed a copy of its security agreement pledging Pioneer's crops and an effective financing statement with Louisiana's Central Registry.
After the initiation of the Henrys' lawsuit, a lengthy history of litigation pursued involving the Henrys, Pioneer, and Larry Crowe and William Eubanks, the operators of Pioneer. Pioneer's cotton crop was seized and released with the deposit of $30,000. Pursuant to a judgment on March 18, 1991, in the Henrys' favor, the funds were released to be applied to the farm's annual debt. The case was consolidated with Succession of Rebe Crowe vs. Sam Henry, III, et al., which seeks to set aside the sale of the West Carroll farm to the *855 Henrys by the Succession and Larry Crowe because of simulation and lesion. However, the merits of this case have not yet been reached.
The Henrys filed an additional motion for sequestration on February 22, 1991, asserting a privilege in government entitlements due Pioneer from the U.S. Department of Agriculture's ASCS office. A writ of seizure and sequestration was issued to the sheriff on the same date. A temporary restraining order prohibiting the disposition of these entitlements was issued on March 1, 1991.[1]
Another motion for sequestration (this was the fourth such motion in this litigation) was filed by plaintiffs on March 14, 1991, seeking seizure of 15,000 to 20,000 bushels of harvested sweet potatoes asserting that neither the April or December rental installments were paid. The writ was issued on March 15, 1991, and the sweet potatoes were seized and sequestered. Up to this point Capital was not involved in this litigation.
A petition for intervention was filed by Capital on May 9, 1991. According to Capital's petition of intervention, Pioneer was delinquent in its loan obligations; as of the date of intervention, Pioneer owed $158,146.73 plus interest and attorney fees on the promissory note secured by the crop and equipment pledges and $80,890.63 plus interest and attorney fees on a second note. Capital alleged that the Henrys were not entitled to a lessor's privilege over the sweet potato proceeds or the farm equipment until the issue of the ownership of the leased premises was resolved. Further, Capital asserted that even if the plaintiffs were found to be the owners of the Crowe Place, Capital's interest primed their lessor's privilege.
The parties agreed to a private sale and the proceeds of this sale, $20,803.50, were deposited into the registry of the court. It is these proceeds that are the subject of the priority dispute between the Henrys and Capital in this appeal.
Judgment was rendered on January 23, 1992, in favor of Capital. The trial court found that Capital's security interest took preference over and primed the Henrys' alleged lessor's privilege. The clerk of court was ordered to release the amount obtained from the sale of the seized sweet potato crop ($20,803.50), together with its accrued interest, to Capital. The trial court also ordered that the seizure and lien plaintiffs enjoyed as a result of the writ of sequestration be cancelled. It is from this judgment that plaintiffs appeal. For reasons set forth below, we affirm.

DISCUSSION
To resolve the issue involved in this appeal we do not have to determine if the "1990 Farm Operating Agreement" was a lease nor if the Henrys are the owners of the property in question.
Prior to January 1, 1992, security interests in growing crops were not within the scope of Chapter 9 of Louisiana's Commercial Code. Therefore, Capital's interest in Pioneer's 1990 sweet potato crop, which arose in May 1990, is not governed by the provisions of the Commercial Code Chapter 9 and is either in the nature of a crop pledge or a chattel mortgage.[2]
Civil Code Articles 2705 and 3218 are the provisions setting forth the lessor's privilege. Article 2705 provides, in part:
The lessor has, for the payment of his rent, and other obligations of the lease, a *856 right of pledge on the movable effects of the lessee, which are found on the property leased.
In the case of predial estates, this right embraces everything that serves for the labors of the farm,
..., and the fruits produced during the lease of the land.
Article 3218 provides:
The right which the lessor has over the products of the estate, and on the movables which are found on the place leased, for his rent, is of a higher nature than mere privilege. The latter is only enforced on the price arising from the sale of movables to which it applies. It does not enable the creditor to take or keep the effects themselves specially. The lessor, on the contrary, may take the effects themselves and retain them until he is paid.
LSA-R.S. 9:4341 to 9:4381 contains the provisions governing the creation and recordation of crop pledges. LSA-R.S. 9:4341 provides, in part, that the only debt that can be secured by a crop pledge is debt for money, goods, and necessary supplies for the current year. For the pledge to be effective, the pledge and effective financing statement must be filed and cancelled pursuant to LSA-R.S. 3:3651 et seq. The statute concludes by providing that the right of pledge shall be subordinate to that of the claim of laborers for wages and for the rent upon the land upon which the crop is being produced. (Emphasis added).
However, LSA-R.S. 9:4521 as it read at all times pertinent provided as follows:
The privileges and pledges on crops shall be ranked in the following order of preference, provided that notice thereof has been properly filed and maintained in R.S. 3:3651, et seq.:

(1) Privilege of the laborer, the thresherman, combineman, grain drier, and the overseer.
(2) Privilege of the lessor.
(3) Pledges, under R.S. 9:4341, in order of recordation.
(4) Privilege of the furnisher of supplies and of money, of the furnisher of water, and of the physician.[3]
Plaintiffs argue that LSA-R.S. 9:4521 gives them as lessors priority over Capital. According to plaintiffs, although R.S. 9:4521 requires that notice be filed and maintained pursuant to R.S. 3:3651 et seq., this notice provision does not apply to the lessor's privilege.
LSA-R.S. 3:3652 as written in 1990 included these definitions:
(2) "Central registry" means the place for recordation of all effective financing statements and written security devices which establish a security interest in farm products, and the place for recordation of assignments, amendments, extensions, and cancellations thereof. (Emphasis added).
(4) "Creditor" means any person who holds a security interest in a farm product.
(14) "Security device" is a written instrument that establishes a creditor's security interest in farm products, or any pledge or privilege described in R.S. 9:4521, whether or not evidenced by a written instrument. (Emphasis added).
(15) "Security interest" means an interest in or encumbrance upon farm products that secures payment or performance of an obligation.
As set forth in R.S. 3:3652(14), the lessor's lien is a privilege described in R.S. 9:4521 and is thus a "security device" which must be recorded with the central *857 registry. R.S. 3:3653 provides that the provisions of this Chapter shall apply to any security device, as that term is defined in this Chapter, which comes into existence on or after January 1, 1987. (Emphasis added). The lessor's lien allegedly enjoyed by the Henrys is such a security device, notice of which must be filed in the central registry as provided in R.S. 3:3651 et seq. Subsection A of R.S. 3:3656 provides:
The central registry shall accept and record only written security devices which are accompanied by a related effective financing statement, and effective financing statements alone for unwritten security devices described in R.S. 9:4521. (Emphasis added).
Although a security device which requires no writing to be effective and enforceable, notice of a lessor's privilege must be recorded in accordance with R.S. 3:3651 et seq. when the object of the lessor's privilege is agricultural products. No such notice was filed by the Henrys.
According to the argument urged by Capital on appeal, its security interest in Pioneer's 1990 sweet potato crop was in the nature of a crop pledge and because its security agreement and financing statement were filed in accordance with R.S. 3:3651 et seq. and R.S. 9:4341 et seq., it is entitled to priority over the Henrys' alleged unrecorded lessor's privilege.
We agree. Copies of Capital's Security Agreement and Effective Financing Statement are contained in the record. Both documents are stamped "Certified Copy, La. Central Registry." Therefore, according to R.S. 9:4521, Capital's interest primes the plaintiffs' alleged lessor's privilege.

DECREE
AFFIRMED.

APPLICATION FOR REHEARING
Before LINDSAY, HIGHTOWER, VICTORY, BROWN and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] The trial court's judgment, dated March 18, 1991, does not mention the ASCS governmental entitlements. A hearing was set for March 18 for Pioneer to show cause why the requested injunctive relief should not be granted to the Henrys. The record indicates that the parties consented to a continuance of the T.R.O. and for a hearing on the matter to be held on May 9, 1991. The record does not reflect that this hearing occurred. We note that Capital did receive an assignment of these ASCS entitlements in the original loan agreement.
[2] LSA-R.S. 9:4770, which provides for the ranking of privileges and security interests subject to Chapter 9 of the Commercial Code, subordinates the rights of vendors and lessors to the rights of secured parties with perfected Chapter 9 security interests. LSA-R.S. 9:4770 goes further and provides that, with the exception of LSA-R.S. 9:4521, any conflict between the priority ranking rules of Chapter 9 shall be resolved in favor of the rules of Chapter 9.
[3] As amended by Acts 1991, No. 539, § 2, effective January 1, 1992, R.S. 9:4521 provides:

As a specific exception to R.S. 9:4770 and R.S. 10:9-201, the following statutory privileges and perfected security interests as affecting unharvested crops shall be ranked in the following order of preference, provided that such privileges and security interests have been properly filed and maintained in accordance with the central registry provisions of R.S. 3:3651 et seq.:
(1) Privilege of the laborer, the thresherman, combineman, grain drier and the overseer.
(2) Privilege of the lessor.
(3) Perfected security interests under Chapter 9 of the Louisiana Commercial Laws in the order of filing, as provided by R.S. 3:3651, et seq.
(4) Privilege of the furnisher of supplies and of money, of the furnisher of water, and of the physician.